UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>BRYAN WESLEY EDISON,<br>Defendant. | Case No. 0:25-cr-00336 (JRT/JFD)<br><br>St. Paul, Minnesota<br>**April 6, 2026**<br>11:00 a.m. |

---

**BEFORE THE HONORABLE JOHN F. DOCHERTY**
**UNITED STATES DISTRICT MAGISTRATE JUDGE**

***FARETTA* HEARING**

APPEARANCES:

For the Government: Matthew D. Evans
UNITED STATES ATTORNEY'S OFFICE
FOR THE DISTRICT OF MINNESOTA
300 South Fourth Street
Minneapolis, Minnesota 55415

For the Defendant: Matthew J. Mankey
MANKEY LAW OFFICE
701 Xenia Avenue South, Suite 505
Golden Valley, Minnesota 55416

Court Reporter: Nancy J. Meyer
Registered Diplomate Reporter
Certified Realtime Reporter
Warren E. Burger Federal Building
and United States Courthouse
316 North Robert Street
St. Paul, Minnesota 55101

Proceedings reported by certified stenographer; transcript produced with computer technology.

**P R O C E E D I N G S**

**IN OPEN COURT**

(Defendant present.)

THE COURT: We are here this morning in the case of the United States of America v. Bryan Wesley Edison for a hearing on Mr. Edison's expressed desire to represent himself going forward in this case.

Let's begin with introductions, please, beginning with counsel for the United States.

MR. EVANS: Good morning, Your Honor. Matt Evans for the United States.

THE COURT: Mr. Evans.

MR. MANKEY: Good morning, Your Honor. Matthew Mankey on behalf of Mr. Edison.

THE COURT: Good morning, Mr. Mankey.

Good morning, Mr. Edison.

THE DEFENDANT: Good morning.

THE COURT: Let's just begin -- I want to give some context to why we're here today. We had an earlier hearing where Mr. Edison was seeking to discharge Mr. Mankey. Because the standard for that is justifiable dissatisfaction and because Mr. Edison didn't provide me with information that led me to believe that that standard had been met, that motion was denied.

Mr. Edison continues, though, to be dissatisfied with

Mr. Mankey, and that's why we're here today, because of a letter that Mr. Edison wrote to the Court dated -- or filed on the -- the letter itself is dated March the 22nd. It was filed here in court on March the 25th.

Just a couple of words before we get started, Mr. Edison, so you sort of know where things stand when we come in. I think that the allegations in the indictment in this case will be very off-putting to a jury. I think Mr. Mankey probably shares that assessment. I have seen portions of the videos. They are, in my view, disturbing and upsetting.

Given the likely effect on a jury, Mr. Mankey -- and he has not shared any of this with me, but my observation is that Mr. Mankey appears to be trying to get this case dismissed before it ever gets to a jury. And, specifically, he filed a motion saying that the statute that you're charged with violating doesn't cover the kind of behavior that you're alleged to have been engaged in.

I have denied that motion. I looked at the law. I looked at the statute. I decided that it did not apply, but that is not the last word.

The next step in this would be to ask the district court judge to review what I did and say whether that was right or that was wrong. That's going to require statutory interpretation. That's going to require digging into

legislative history. That's going to require looking at other cases and looking at the history of this particular statute.

If that is not successful, I anticipate that one likely -- but not the only -- next step would be to negotiate with the prosecution for the best resolution possible. That would require thorough knowledge of the federal sentencing guidelines. And I brought a copy this morning so you can see; this is a big, thick book. It is single-spaced, several hundred pages long.

So I guess what I'm trying to convey, Mr. Edison, is that at least the next steps in this case are going to be quite technical and require a good deal of technical legal knowledge; the kind that you get from going to law school and then having some years of experience litigating criminal cases in federal court. So that's where I start from.

And then I also have a question concerning your letter in which you call me Judge Dockerty -- name misspelled -- and then say "a self-admittedly biased judge." Before we get to the substance of your request, what is behind that statement? Because I need to assess my own continued participation in light of that.

THE DEFENDANT: Right. Yeah. Yeah. Not -- not mean to offend anyone or you in particular. This is based off our last hearing. You said -- there was -- you said --

I asked you why did you -- why did you deny all my motions. And, you know, you said, you would have denied my furlough had I went -- had I placed a furlough -- you know, requested a furlough to see the birth of my daughter while I was at the halfway house.

And you said that just based off the allegations -- I asked you why would you deny all these motions and why would you deny my furlough, you know, to go see the birth of my child.

You said just purely based on the allegations. And, you know, you're basically assuming that -- you're kind of assuming that I've already -- I'm already guilty when these are allegations. And, you know, I would expect you to be nonbiased and, you know, look at the case from that standpoint and not be already on the side of the allegations.

THE COURT: I am nonbiased. I do think based on my review of the evidence that there's a strong likelihood of conviction. That's not the same as not presuming you innocent at all times up until a jury, if they do, comes in with a guilty verdict.

And so based on that, I will continue with the case. I just wanted to know what was meant by that statement. As I say, my assessment of the strength of the evidence is something judges have to do for a lot of reasons as the case

goes on, and under no circumstances would I ever allow that to overcome the presumption of innocence. All right?

THE DEFENDANT: All right.

THE COURT: All right. So I've got a fairly short letter in front of me. I guess my next question would be, are you wanting to represent yourself, or are you wanting a different lawyer? In other words, are you wanting a lawyer, but not just Mr. Mankey or do you want to represent yourself?

THE DEFENDANT: Yeah. Basically, we talked about a few different things at the last hearing about motions that weren't being dismissed and motions that were being filed without my knowledge or consent and that didn't represent, you know, my thoughts or opinions completely.

And so I'd like to represent myself right now as -- as of this time so I can make sure I get those motions out that represent my thoughts and opinions, and I'd like to reserve my right to, you know, hire someone in the future, if I do decide to.

THE COURT: I think it's quite unlikely -- well, if you're going to represent yourself, you're going to represent yourself. You can go out and hire somebody later on, I'm sure. I am not so sure, though, that -- well, there would have to be further proceedings about your right to represent yourself before we'd go to the public defender's

office and ask for an additional -- a new lawyer. Do you understand that?

THE DEFENDANT: Right.

THE COURT: All right. Do you -- well, let me hear from the attorneys, and then, if need be, we'll continue with the self-representation portion of the hearing.

Mr. Evans, anything you want to say?

MR. EVANS: No, Your Honor.

THE COURT: Mr. Mankey, anything you want to say?

MR. MANKEY: Your Honor, at our last hearing, I represented to the Court that out of respect for Ms. Roe and the Court, that I would do whatever the Court felt was prudent and appropriate. I guess I still will do that, both out of respect for the Court and Ms. Roe.

There has been a significant breakdown in the relationship, however. There are motions that have been suggested, which I don't think under the rules of professional conduct I can legitimately file. It has gotten to the point where the representation has really broken down.

In anticipation of this hearing, I instructed Mr. Edison to review the Federal Rules of Criminal Procedure, the Federal Rules of Evidence, and I've done what I can to prepare him should the Court allow him to proceed

pro se.

But the Court knows me well enough to know that I will do whatever is ethical, prudent, and appropriate, and ordered by the Court.

THE COURT: All right. Thank you, Mr. Mankey.

Mr. Edison, if I grant your request that you represent yourself, do you want what is called standby counsel, which means that Mr. Mankey would still be here, but he would be answering specific questions that you had in order that you could represent yourself? He would not be exercising independent judgment as to what is the appropriate course to take.

THE DEFENDANT: At this time, I would not like standby counsel or any other hybrid form of counsel at this time.

THE COURT: Well --

THE DEFENDANT: I've actually done a lot of research. They do actually have, you know, the rules of criminal procedures and -- on the tablet here at the Sherburne County Jail. And, you know, I'm doing a lot of research on case law.

And I did look into *Faretta* hearings and that kind of thing, *Faretta v. California*. And I've been doing a lot of research, so I think I'll be prepared to represent myself moving forward at this time.

THE COURT: How far did you go in school, Mr. Edison?

THE DEFENDANT: Personally, I do have some college education. I did not finish a full degree, but I did work alongside, I guess, with the mother of my children while she was going to law school. And we are still in contact, and, you know, she does give me a lot of information.

She's just finished law school recently, maybe about a year ago. So I did help her out with a lot of different -- different reports and that kind of thing.

THE COURT: What kind of law does your -- your --

THE DEFENDANT: She's actually a public defender.

THE COURT: Where at?

THE DEFENDANT: State level.

THE COURT: The state level. All right.

When you say you have some college, how much is that?

THE DEFENDANT: About two years of college.

THE COURT: What did you study in college?

THE DEFENDANT: I studied computer science.

THE COURT: Oh, okay.

THE DEFENDANT: Kind of unrelated to the law field.

THE COURT: Right. Do you have any legal training?

THE DEFENDANT: Yeah, I would like to say --

THE COURT: Mr. Edison, do you have any legal training?

THE DEFENDANT: As far as legal training, I don't have official legal training, but all that would be necessary to -- to represent myself would be that I do so intelligently and voluntarily. I guess to say also, that legal training is not a requirement.

THE COURT: No, I know it's not. But I want to know if you have any legal training.

THE DEFENDANT: No. Like I said, I don't have any official legal training.

THE COURT: All right. As I said, the next steps in this case are to appeal my denial of your motion that says that the animal crushing statute does not cover your kind of behavior. Are you familiar with how to do what's called legislative history research?

THE DEFENDANT: Yeah. Case law and that kind of thing.

THE COURT: No. What is legislative history research?

THE DEFENDANT: I don't really think this is a quiz type of thing. I don't want to be quizzed.

THE COURT: Well, you do have to answer the questions, though, because I've got a decision to make, and I need information to make that decision.

Do you understand that legislative history means looking at what Congress meant when it passed a particular law?

THE DEFENDANT: Okay.

THE COURT: Do you understand that there are different sources that lawyers consult when they're doing that kind of research?

THE DEFENDANT: Yes. Understood.

THE COURT: Have you ever done that research yourself?

THE DEFENDANT: As far as research, I've done plenty of research. But like I said, I don't have a law degree. I'm not skilled in law, but I think I know enough to fight my case right now and to write motions.

THE COURT: Well, I'm sure you know how to write motions, but what I'm trying to communicate is that the next step here is a fairly technical step. And I don't know that we're communicating well on that point.

So how would you go about doing the legislative history research that needs to be done so that you could ask the district judge to reverse what I did?

THE DEFENDANT: Like I said, I mean, I didn't come here to be quizzed or anything --

THE COURT: Well, you're being quizzed. So if you want your motion to be granted, do your best to answer the

question.

This is how it's going to be from now on if you represent yourself. You'll be answering questions. You'll be responding to things the Court does. You'll be responding to things the prosecutor does. Eventually, you'll be talking to a jury. So we might as well start now.

THE DEFENDANT: Yeah. So I'll be prepared at that time.

THE COURT: How?

THE DEFENDANT: Based off the research that I'm doing and my close contact with a lawyer.

THE COURT: How many times have you gone through the Federal Rules of Criminal Procedure?

THE DEFENDANT: I read through them a couple times so far being here.

THE COURT: What about the Federal Rules of Evidence? Do you understand you'll need to follow those?

THE DEFENDANT: Yes.

THE COURT: All right. Have you read them?

THE DEFENDANT: Yes.

THE COURT: Did you understand them?

THE DEFENDANT: Yes.

THE COURT: Do you understand that if you come into court you'll be expected to represent yourself to the same standard as a licensed attorney?

THE DEFENDANT: Yes, I understand that.

THE COURT: And I'm not here to coach you. I'm not here to suggest how things ought to be done. Do you understand that?

THE DEFENDANT: Yes, I understand.

THE COURT: Do you understand that Mr. Evans, although he needs to make sure that justice is done, is under no obligation to assist you or cut you slack?

THE DEFENDANT: Understand now.

THE COURT: Are you familiar with the statute that you're charged with violating?

THE DEFENDANT: Yes.

THE COURT: Have you read it?

THE DEFENDANT: Yes, I've read it.

THE COURT: Are you familiar with the sentencing guidelines?

THE DEFENDANT: Yes.

THE COURT: Because, you know, if there's a conviction, those become very important.

THE DEFENDANT: Right.

THE COURT: Do you understand that at a trial things move very quickly? You've talked about doing research. There isn't time to do research in a trial. Lawyers call upon their law school training and their years of experience to know what to do right there in the moment.

Do you understand that?

THE DEFENDANT: Yes, I understand.

THE COURT: You understand that, in my opinion, a lawyer, therefore, would do a better job than you at a trial?

THE DEFENDANT: Yes.

THE COURT: Do you understand that there are things -- evidence, for example, might come in at a trial where you represent yourself that a lawyer would have kept out of evidence?

THE DEFENDANT: Correct.

THE COURT: You understand that there are defenses that a lawyer might make that you wouldn't?

THE DEFENDANT: I understand that.

THE COURT: And do you understand that issues that you don't raise are considered waived? That means you can't complain about them to an appellate court because you didn't object because you didn't know to object. Do you understand that?

THE DEFENDANT: Yes, I understand.

THE COURT: Is there any reason I ought to be concerned about your ability here this morning to make an important decision? Shortness of sleep? Stress? Over-the-counter medications for a cold? Anything like that that's interfering with your ability to think clearly and

make decisions?

THE DEFENDANT: No.

THE COURT: All right. Well, Mr. Edison, I just have to tell you, I think that the idea of representing yourself in a case of -- in any case, but especially in a case of this nature, is an absolutely terrible idea. A trained lawyer would do a much better job than you would in presenting your case and in trying your case. Are you determined to go ahead?

THE DEFENDANT: Yes.

THE COURT: All right. All right, Mr. Edison. Well, before I say that, earlier I said that if you wanted to bring someone else in later, we'd have a hearing about that. I want to be clear, though; I think what I said might be vulnerable to misinterpretation.

You have a right to be represented by a lawyer. Right now you're waiving that right. If you choose to exercise that right in the future, it will be honored.

What I meant to say, though, was that if there is an effort to what's called gamesmanship -- I want a lawyer, I don't want a lawyer, I want a lawyer, I don't want a lawyer -- in order to drag out the proceedings or for other improper purposes, that I would not allow that.

Do you understand the distinction that I'm making?

THE DEFENDANT: Understand.

THE COURT: So a sincere request for an attorney will be honored. A strategic employment of the right to engage counsel and then not to engage counsel and then to engage counsel would be a different kettle of fish. Do you understand that?

THE DEFENDANT: Yeah, I understand that.

THE COURT: All right. All right. Mr. Edison, I find that you have made a knowing, intelligent, voluntary waiver of your Sixth Amendment right to the assistance of counsel.

Mr. Mankey, you are discharged from further obligations in this case.

And, Mr. Edison, you will be proceeding representing yourself going forward.

Mr. Evans, anything else?

MR. EVANS: No, Your Honor.

THE COURT: Mr. Edison, anything else?

THE DEFENDANT: No.

THE COURT: All right. Thank you, Mr. Mankey, for the work you did on this case. I appreciate it.

And we will go forward. Get those objections filed with the district court, Mr. Edison. That's now on you, not on Mr. Mankey.

Mr. Mankey, something you wish to say?

MR. MANKEY: Your Honor, notwithstanding my

discharge from the case, Your Honor, I think I feel compelled to remind Mr. Edison that the R&R was filed last week, and under the rules, he has 14 days to make his objection. So this will be the last advice that I give him.

But I just want the record to reflect that he was informed that the R&R is about 4 days old now. So he has -- so if he's going to object to this Court's rulings on those motions, he needs to act within the next week or so.

THE COURT: Clear on that, Mr. Edison?

THE DEFENDANT: Yes.

THE COURT: All right.

Court is adjourned. Thank you.

(Proceedings were concluded at 11:24 a.m.)

CERTIFICATE OF COURT REPORTER

I, Nancy J. Meyer, Registered Diplomate Reporter, Certified Realtime Reporter, do hereby certify that the above and foregoing constitutes a true and accurate transcript of my stenographic notes and is a full, true, and complete transcript of the proceedings to the best of my ability.

Dated this 10th day of June, 2026.

*/s/ Nancy J. Meyer*
Nancy J. Meyer
Official Court Reporter
Registered Diplomate Reporter
Certified Realtime Reporter